**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

SHERGROUP USA, LLC, INTREPID
SERVICES INTERNATIONAL, LLC, and
ONE WORLD SERVICES, LLC,
    Plaintiffs,
v.                            Case No. 6:26-cv-01128-RBD-RMN

CLAIRE SANDBROOK and
SHERGROUP GLOBAL CONSULTING LLC,
    Defendants.
_____/

**DEFENDANTS' MOTION TO COMPEL ARBITRATION**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendants, CLAIRE SANDBROOK ("Sandbrook") and SHERGROUP

GLOBAL CONSULTING LLC , by and through their undersigned counsel, hereby

file this Motion to Compel Arbitration, and in support thereof, state as follows:

**INTRODUCTION**

1.      The underlying action is a suit against an alleged dissociated member

of a limited liability company and her newly formed company. The suit includes,

in part, claims alleging breach of noncompetition covenants included in a signed

Operating Agreement, a copy of which is attached to the Complaint.  However, as

part of the Operating Agreement, the parties also executed a separate document

which they referred to as the Side Bar Agreement, which is not attached to the

Complaint.  The Side Bar Agreement  includes, among other things, an arbitration

provision in Article 5.3.1 that requires final and binding arbitration of "all claims or disputes relating in any way to the performance, interpretation, validity, or breach" of the Side Bar Agreement.  A true and correct copy of the Side Bar Agreement signed by all the parties except Enrique Sierra is attached hereto as **Composite Exhibit "A."**   Defendants seek enforcement of this arbitration provision and rely on the Declaration of Claire Sandbrook in support of this motion.

2.     The Side Bar Agreement contains a broad arbitration clause requiring final and binding arbitration under the American Arbitration Association (AAA) rules in Miami-Dade County, Florida, and authorizes the arbitrator(s) to award monetary and injunctive relief and fees to the prevailing party.

3.     Plaintiffs' claims against Sandbrook arise from and are inextricably intertwined with the Side Bar Agreement's covenants, rights, and relationships among Plaintiff, Shergroup USA, LLC ("Shergroup USA"), its members, and the individuals identified as "Actual Owners" in the Side Bar Agreement.

4.     Plaintiffs' Complaint asserts, among other things, Lanham Act/unfair competition and related Florida law claims premised on rights, relationships, and obligations among Shergroup USA, its members and principals, and Sandbrook's alleged conduct under or relating to those relationships.

2

5.     Under the Federal Arbitration Act ("FAA"), the agreement is valid and enforceable, its scope is broad, and all asserted claims against Sandbrook must be compelled to arbitration and this action stayed.

## BACKGROUND

6.     On May 21, 2026, Plaintiffs filed a Complaint against Shergroup Global Consulting, LLC ("SGC") and Sandbrook.

7.     The Complaint asserts various claims which relate to the Operating Agreement and business dealings of Plaintiff Shergroup USA. The claims in the Complaint also include claims related to the Shergroup trademark.

8.     According to the Complaint, Shergroup USA is a company that provides security related services. Its principal place of business was originally in Florida before being moved to Alabama.  However, Shergroup USA offered services throughout the United States, including one client located in Colorado.

9.     Sandbrook moves pursuant to the FAA, 9 U.S.C. §§ 2–4, to compel Plaintiffs to arbitrate this dispute and to stay this action pending arbitration pursuant to 9 U.S.C. § 3.

10.     The Operating Agreement for Shergroup USA attached to the Complaint identifies Sandbrook and Plaintiffs, One World Services, LLC, and Intrepid Services International, LLC, as members.

11.     According to the Declaration of Claire Sandbrook filed in conjunction with this motion, the Side Bar Agreement, dated May 23, 2022, is between Plaintiff Shergroup USA, Defendant Sandbrook, and the following individuals who own the two other Co-Plaintiffs: Enrique Sierra ("Sierra"), Greg Wright ("Wright"), John Johnson ("Johnson"), and Paul Hammond ("Hammond") (collectively, the "Actual Owners"). Although the copy of the Side Bar Agreement in Defendant Sandbrook's possession is not signed by all parties, Sandbrook's declaration contends a fully executed version of the Side Bar Agreement was signed and is either in Plaintiffs' possession or is in possession of one or more of the representatives of the parties who assisted with the negotiation and drafting of the Side Bar Agreement.

12.     Article I of the Side Bar Agreement further delineates the Actual Owners as follows:  (1) for One World Services, LLC -  Wright, Hammond, and Sierra and (2) for Intrepid Services International, LLC – Johnson.

13.     The Side Bar Agreement was negotiated as part of the Operating Agreement. Specifically, the Recitals provision in the Side Bar Agreement refers to the Operating Agreement as being "dated the same date as the date hereof."  In addition, the Side Bar Agreement contains terms which identify the "Actual Owners" of Shergroup USA (*see* Art. I) and place restrictions on those ownership interests (*see* Arts. II – V).  Those restrictions include restrictions on admittance of

new owners, restrictions on the sale of ownership interests, non-competition covenants, and an arbitration provision. Thus, the Side Bar Agreement supplements and modifies the terms of the Operating Agreement as it relates to Shergroup USA and the two documents should be interpreted as one contract.

14.    Section 5.3.1 of the Side Bar Agreement includes a broad arbitration provision applicable to disputes arising from the parties' contractual relationship. The Side Bar Agreement says the following related to the obligation to submit disputes to binding arbitration, in pertinent part:

> 5.3.1 Arbitration. Notwithstanding anything to the contrary in this Agreement, all claims or disputes relating in any way to the performance, interpretation, validity, or breach of this Agreement shall be referred to final and binding arbitration, before an arbitrator (mutually agreeable to the parties to the claim or dispute) under the arbitration rules of the American Arbitration Association ("AAA") in Miami-Dade County, Florida, except as modified hereby. If the parties to the dispute cannot agree upon the appointment of an arbitrator, each shall appoint one arbitrator and a third arbitrator shall be selected by the two appointed arbitrators within twenty days, following the receipt of written notice of arbitration, as prescribed by AAA. In the event that both appointed arbitrators are unable to select the third arbitrator within a period of twenty days, AAA shall be permitted to submit an appointment.

15.    Article 5.3.3 requires, in part, a written award with findings of fact and conclusions of law and states that judgment on the award is final and binding.

16.     Article 5.3.5 states "[n]otwithstanding the foregoing, the parties may at any time seek injunctive relief in a court of law in order to enforce the provisions of this Agreement."   This provision is intended to permit a party to seek an injunction to enforce the arbitration provision if an action is filed in a court of law.

17.     Plaintiffs' Complaint pleads extensive factual allegations concerning the parties' rights, ownership, restrictive covenants, and business relationships centered on Shergroup USA and its members and principals.   More specifically, the 12 causes of action set out in the Complaint are summarized as follows:

Count I - Breach of Operating Agreement (article 12.1 Covenant Against Unfair Competition

Count II - Breach of Operating Agreement (article 12.2 Non- Competition; Article 12.66- Sandbrook Specific Covenants

Count III - Breach of Fiduciary Duty

Count IV- Wrongful Dissociation (Fla. Stat. 605.0601

Count V- Tortious Interference

Count VI- Federal False Designation or Original & Unfair Competition 15 U.S.C.§1125 (a)(1)(A)

Count VII Contributory Federal False Designation of Original & Unfair Competition

Count VIII - Florida Common Law Trademark Infringement & Unfair Competition

Count IX - Cancellation of Trademark Registration 15 U.S.C. §1119

Count X - Fraudulent Procurement of Trademark Registration 15 U.S.C. §1120 (Shergroup against Defendant LLC)

6

Count XI - Fraudulent Inducement

Count XII -  Declaratory Judgment 28 U.S.C. §2201

18.     Shergroup Global Consulting, LLC ("SGC") has also been named a Defendant in Counts V, VI, VIII, IX, X, and XII. SGC has denied liability and asserted defenses in its Answer, including defenses regarding ownership and authority related to Plaintiff Shergroup USA and third party Shergroup Limited, an entity owned by Sandbrook with its principal office in the United Kingdom. SGC is wholly owned by Sandbrook and the allegations in the Complaint allege that SGC operated at the direction of Sandbrook.

19.     The Side Bar Agreement's non-compete and confidentiality covenants, right-of-first-refusal framework, and Florida-governed enforcement mechanisms confirm the Side Bar Agreement regulates the very conduct and relationships from which Plaintiffs' claims arise.  Further, the Plaintiffs' claims related to trademark cancellation or alleged fraudulent procurement of a registration are related to the parties' contractual obligations and performance of the parties' contract and should be resolved in arbitration.

20.     Specifically, the Operating Agreement, which is one with the Side Bar Agreement, is specifically realleged in Counts 1 through 4 and 11 and 12.  Count 5 alleges a specific reference to the relationship that Sandbrook had as a member and how her membership gave her knowledge about the corporate ongoings of

Shergroup USA.   (Compl. ¶¶ 140-41.) Counts 5 through 10 all reallege the allegations concerning how Sandbrook originally formed Shergroup USA and how Shergroup USA began developing customer goodwill while Sandbrook was the sole member, years prior to the Plaintiffs being involved in its operation. (Compl. ¶¶ 13-21.)

21.    Moreover, counts VI through X are either false designation or trademark claims, and the alleged conduct giving rise to those claims is alleged to be a breach of the Operating Agreement as claimed in Counts I and II.  Specifically, Count I of the Complaint realleges, in part, paragraphs 59 through 63, which contain allegations regarding registration of the trademark in the name of SGC. Count II realleges, in part, paragraph 66, which contains allegations regarding Sandbrook's claim of ownership in the Shergroup trademark.  Counts I and II each make allegations related to the unauthorized use of the Shergoup name being a breach of the Operating Agreement.  (*See* Compl., Count I, ¶ 122; Count II, ¶¶ 119-120).

22.    Thus, the allegations which form a basis for the contract, tort, and statutory claims are all related to the Operating Agreement and Side Bar Agreement as the alleged relationships, obligations, and liabilities underlying those claims are directly connected.

## MEMORANDUM OF LAW

### LEGAL STANDARD

The Federal Arbitration Act ("FAA") embodies a liberal federal policy favoring arbitration agreements and requires courts to compel arbitration where a valid written agreement covers the dispute and to stay litigation pending arbitration. 9 U.S.C. §§ 2–4.  In deciding a motion to compel arbitration, the Court considers: (1) whether the parties agreed to arbitrate the dispute, and (2) whether legal constraints external to the parties' agreement foreclosed arbitration. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). Whether an agreement to arbitrate exists is determined under applicable state-law principles governing contract formation. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005).  If the Court determines that the parties agreed to arbitrate the dispute, the FAA requires the Court to stay the action pending arbitration. 9 U.S.C. § 3. Here, the FAA applies because Shergroup USA provided services across state lines.

Florida's arbitration statute also favors the arbitrability of disputes and includes provisions similar to the Federal code regarding compelling arbitration and staying litigation.  Fla. Stat. §§ 682.01-682.25 (2025).

9

## ARGUMENT

### A. A Valid Written Arbitration Agreement Exists

The Operating Agreement and the Side Bar Agreement deal with the same subject matter: the terms of ownership of Shergroup USA. The Side Bar Agreement specifically references the Operating Agreement and states its purpose is to further delineate terms as it relates to the members of Shergroup USA and their principals. Thus, the Side Bar Agreement and the Operating Agreement must be interpreted as one contract. *Clayton v. Howard Johnson Franchise Sys., Inc.*, 954 F.2d 645, 648 (11th Cir. 1992) ("Under Florida law, where two or more documents are executed by the same parties, at or near the same time and concerning the same transaction or subject matter, the documents are generally construed together as a single contract".); *Pier 1 Cruise Experts v. Revelex Corp.*, 929 F.3d 1334, 1340-1341 (11th Cir. 2019) (citing a Florida case holding that when a writing refers to another document, the document is interpreted as part of the writing).

Article 5.3.1 of the Side Bar Agreement provides that all claims or disputes relating in any way to the performance, interpretation, validity, or breach of the Agreement shall be referred to final and binding arbitration under the AAA rules in Miami-Dade County, Florida. The Side Bar Agreement states Florida law governs its construction and enforcement. Under Florida law, the Side Bar

10

Agreement is enforceable on its face and supported by mutual covenants and consideration.

Sandbrook does not have a fully executed Side Bar Agreement in her possession, but it is believed a fully executed Side Bar Agreement exists or was otherwise agreed to by the parties. If necessary, the fully executed Side Bar Agreement can be obtained through discovery to the Plaintiffs or to the third parties who assisted with the negotiation and preparation of the Side Bar Agreement. Discovery related to the issue of whether an arbitration agreement was formed has been permitted when an issue exists as to formation. *Adams v. Genesis Eldercare Rehab. Services, LLC*, No. 5:23-CV-441-GAP-PRL, 2024 WL 730475, at *1 (M.D. Fla. Feb. 22, 2024).

Significantly, the arbitration clause has a delegation provision in Section 5.3.1 that refers to all disputes related to "the performance, interpretation, validity, or breach of" the Side Bar Agreement. This provision constitutes clear and unmistakable evidence that the parties delegated gateway questions of arbitrability — including validity and interpretation of the arbitration agreement — to the arbitrator. *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1148 (11th Cir. 2015). Accordingly, threshold disputes regarding scope, enforceability, and arbitrability must be decided by the arbitrator. *Parnell*, 804 F.3d at 1146. Thus, the discovery

11

and any other proceedings relevant to the interpretation or validity of the arbitration provisions should occur in arbitration.

**B. The Arbitration Clause's Scope Is Broad and Encompasses All Claims Asserted**

Florida and Federal law construes the addition of "related to" or "relating to" as providing the arbitration provision with broad application. *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013) (discussing how the phrase "relating to" broadens the scope of an arbitration provision when compared to a provision which merely applies to disputes "arising out of" the contract).  The *Jackson* court concluded that an arbitration provision with broad "relating to" terminology refers to those claims having a "'significant relationship' to the contract—regardless of whether the claim is founded in tort or contract law." Id. (discussing the "contractual nexus" approach broadly).

Similarly, Federal Courts have broadly interpreted arbitration provisions. "'An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583, 80 S.Ct. 1347, 1352-1353, 4 L.Ed.2d 1409 (1960)). In *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1221 (11th Cir. 2000), the court observed

that "[a]n arbitration agreement is not vague solely because it includes the universe of the parties' potential claims against each other."  Rather, if parties wish to exclude claims from arbitration, the "parties must clearly express their intent" in the contract to do so.  *Id.* at 1222.

The Eleventh Circuit has recognized that some claims may be excluded from an arbitration provision which states that it is limited to claims arising out of or related to the contract.  In *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204 (11th Cir. 2011), a cruise line employee who was party to an employment agreement containing an arbitration provision filed a multicount complaint which included allegations related to being a victim of rape while serving as an employee of the cruise line defendant.  The arbitration provision specified, in part, that it was limited to claims "relating to or in any way arising out of or connected with the Crew Agreement, these terms, or services performed for the Company. " *Id.* at 1215. The court concluded that the claims for unsafe work place and failure to provide medical treatment under the Jones Act, unseaworthiness claim, a maintenance and cure claim, and a Seaman's wage act claim were all arbitrable. *Id.* at 1220.  On the other hand, the common law claims for false imprisonment, intentional infliction of emotional distress, spoliation of evidence, invasion of privacy, and fraudulent misrepresentation, which all emanated from the alleged rape, were all claims that were unrelated to the employment agreement and

13

therefore not arbitrable. *Id.* at 1219-20. In making its ruling, the court noted that the claims arising from the rape could have occurred even where the cruise line and the employee fully performed their duties under the employment agreement. *Id.* To illustrate, the court compared a scenario where a guest on the ship was the victim of a rape and suffered the same treatment from the cruse line. Such a guest would have the same claims, notwithstanding that there was no employment agreement.

Conversely, in *Calcaterra v. Baptist Health S. Florida, Inc.*, 733 F. Supp. 3d 1349 (S.D. Fla. 2024), an employee filed an action under the False Claims Act. The parties had signed an employment agreement which included an arbitration agreement. The arbitration provision limited its application to "any controversy, dispute, disagreement or claim arising out of or relating to this Agreement, or any alleged breach thereof, or the subject matter thereof." *Id.* at 1352. The District Court granted the motion to compel arbitration and stayed the case. *Id.* at 1358-59. In doing so, the court concluded the provision in *Doe v Princess Cruise Lines* was distinguishable. *Id.* at 1357-58. Moreover, the court observed that the facts in *Doe* involved allegations of sexual assault, whereas in *Calcaterra* the claims related to the employee's retaliation claims.

The arbitration provision in Section 5.3.1 is broad and extends to "all claims or disputes relating in any way to the performance, interpretation, validity, or

14

breach" of the Agreement. Plaintiffs sued Sandbrook for federal Lanham Act false designation, breach of non-competition covenants and unfair competition, Florida common-law trademark, tortious interference, and claims for trademark cancellation and fraudulent trademark procurement allegations, all premised on asserted rights arising from relationships, covenants, and ownership positions related to Shergroup USA and its principals addressed in the Side Bar Agreement.

A cornerstone of the Plaintiffs' claims is the Operating Agreement and the restrictive covenants in the Operating Agreement. Those disputes certainly "relate in any way" to the Side Bar Agreement's restrictive covenants, ownership-related rights of first refusal, confidentiality and non-compete protections, and the parties' roles defined therein.

The restrictive covenants in the Operating Agreement at paragraphs 12.1-12.8.3 are very similar to the restrictive covenants at paragraphs 4.1-4.5 of the Side Bar Agreement. Moreover, the conduct alleged by Plaintiffs does not involve sexual assault or other torts involving violence or personal injury. Rather, the tortious conduct alleged involves business torts such as tortious interference with business relationships and fraudulent inducement to enter the Operating Agreement.

Significantly, the analysis in *Doe*, 657 F.3d 1204, 1219-20, was that the plaintiff's claims in that case could have been brought even if the parties had fully

15

complied with the employment agreement. Conversely, here, even the counts which do not specifically reallege the existence of the Operating Agreement (*i.e.* counts 5 through 10) allege conduct, such as unfair competition and trademark infringement, which would be a violation of the restrictive covenants in the Operating Agreement and the Side Bar Agreement . Thus, none of the claims in the Complaint are exempt from arbitration.

### C. The Claims Against SGC Are Arbitrable Under the Doctrine of Equitable Estoppel

In *Smith v. Beverly Hills Club Apartments*, LLC, 2016 WL 344975 (S.D. Fla. Jan. 28, 2016), the court held that under the doctrine of equitable estoppel and as recognized by Florida law, "a non-signatory may compel arbitration 'when the signatory to the contract containing the arbitration clause raises allegations of concerted conduct by both the non-signatory and one of more of the signatories of the contract.'" (quoting *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 212 (Fla. 3d DCA 2003)).

Here, Plaintiffs allege that "Sandbrook is the sole member, manager, and registered agent of [SGC], and at all times relevant to this Complaint [SGC] has acted under Sandbrook's exclusive control and direction." (Compl. ¶ 58.) Moreover, the claims against both defendants stem from the same common core

16

of allegations related to Sandbrook's relationship to Shergroup USA and her subsequent creation of SGC.  (*See supra* pgs. 13- 15.)

SGC filed an answer on June 16, 2026, but otherwise has not substantially participated in the litigation.  Therefore, SGC has not waived the right to compel arbitration because filing an answer by itself is not a waiver.  *See Dockeray v. Carnival Corp.*, 724 F. Supp. 2d 1216, 1222 (S.D. Fla. 2010) (holding that filing an answer without raising the right to arbitrate as an affirmative defense is, without more, not enough to waive the right to arbitrate); *Spinner v. Credit One Bank, N.A.*, No. 617CV340ORL37TBS, 2017 WL 6731967, at *2 (M.D. Fla. Dec. 29, 2017) (citing two Eleventh Circuit decisions for the proposition that waiver results when there has been "long delays *and* extensive use of discovery or motion practice prior to the" assertion of the arbitration right).  Here, SGC has not substantially participated in the litigation and there has been no discovery.  Further, SGC is not a direct party to the Side Bar Agreement; therefore, filing an answer prior to the response of Sandbrook, who is a party to the Side Bar Areement, does not constitute a knowing waiver of the right to arbitrate. *See Morgan v. Sundance*, Inc., 596 U.S. 411, 417 - 419 (2022) (recognizing that waiver is an intentional relinquishment of a known right and eliminating requirement that the nonmovant show prejudice).

17

## D. A Stay Is Required

The FAA "requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985). If the Court compels arbitration, it should stay all claims against Sandbrook and SGC pending arbitration under 9 U.S.C. § 3. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (holding when a party requests a stay under § 3, the district court must stay the action rather than dismiss it).  This mandate applies to all arbitrable claims.

To the extent there are any non-arbitrable claims, they can be stayed pending arbitration. *Klay*, 389 F.3d at 1204 (holding courts have discretion to stay nonarbitrable claims when litigants advance arbitrable and nonarbitrable claims). Here, if claims are deemed nonarbitrable, separate trials proceeding at the same time is not feasible because all the pending claims relate in some way to the relationship and obligations to Shergroup USA, which are inevitably impacted by the contract between the parties.

Here, because all claims asserted against Sandbrook and SGC fall within the broad arbitration clause and arbitrability questions are delegated to the arbitrators, arbitration is proper and a stay is mandatory.  No claims are nonarbitrable as alleged by Plaintiffs.  All claims are related to the Operating Agreement and

18

Sidebar Agreement based on a common core set of acts, that being the alleged wrongdoing by Sandbrook in violation of the Operating Agreement restrictions.

**E. Sandbrook Has Not Waived the Right to Answer the Complaint if this Motion is Denied**

Sandbrook's filing of this motion is not intended as a waiver of the right to answer the Complaint and file a counterclaim should the Court deny all or part of this motion. *Armont v. K12 (Florida Cyber Charter Acad. - Flcca)*, No. 319CV00334J34MCR, 2019 WL 12381095, at *2 (M.D. Fla. Dec. 18, 2019) ("By filing its Motion to Compel Arbitration, Defendant properly filed a pre-answer motion and, without waiving its right to compel arbitration, showed its intent to defend against this action."); *Creative Tile Mktg., Inc. v. SICIS Intern., S.r.L.*, 922 F. Supp. 1534, 1537 (S.D. Fla. 1996) (denying motion for default where defendant filed motion to compel arbitration.).

**WHEREFORE**, Defendants, CLAIRE SANDBROOK and SHERGROUP GLOBAL CONSULTING, LLC, respectfully request that this Court:

i.      Compel Plaintiffs to arbitrate all claims against Sandbrook and SGC under the Side Bar Agreement's arbitration clause, 9 U.S.C. §§ 2–4;

ii.     Stay this action as to Sandbrook and SGC under 9 U.S.C. § 3 pending completion of arbitration;

iii.    Order the parties to proceed in accordance with the AAA rules in Miami-Dade County, Florida; and

iv.     Grant such other and further relief as the Court deems just and proper.

## <u>LOCAL RULE 3.01(G) CERTIFICATE</u>

I HEREBY CERTIFY that on July 1, 2026, prior to filing this motion and pursuant to Local Rule 3.01(g), attorney Spencer M. Gledhill conferred by telephone and email with Julia Weber, attorney for Plaintiffs, in a good faith effort to resolve the issues raised in this motion. Ms. Weber indicated via email on July 20, 2026 that the Plaintiffs are not in agreement to the relief requested in this motion.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 21, 2026, the foregoing was submitted for filing to the Clerk of the Courts by using the CM/ECF system which will send a Notice of Electronic Filing to the Electronic Service Recipients of record, in accordance with Rule 5 of the Federal Rule of Civil Procedure and the CM/ECF Administrative Procedures of the Middle District of Florida.

/s/ Robert W. Anthony_____
Robert W. Anthony, Esquire
LEAD COUNSEL FOR DEFENDANTS
Florida Bar No. 346918
Fassett, Anthony & Taylor, P.A.
1325 W. Colonial Drive
Orlando, FL 32804
Phone: 407-872-0200 / Fax: 407-422-8170
Primary E-Mail: ranthony@fassettlaw.com
Secondary E-Mails:
ksimpkins@fassettlaw.com
*Attorneys for Defendants*


Spencer M. Gledhill, Esq.
Fla. Bar No. 0087247
Fassett, Anthony & Taylor PA.
1325 W. Colonial Drive
Orlando, FL 32804
Phone: 407-872-0200/ Fax: 407-422-8170

20

Primary E-Mail: sgledhill@fassettlaw.com
Secondary E-Mail: lpropst@fassettlaw.com

**Service List:**
Julia Hannah Weber, Esq.
Joseph F. Southron, Esq.
Southron Firm, P.A.
400 N. Ashley Drive, Suite 1720
Tampa, FL 33602
Primary Emails: julia.weber@southronfirm.com;
joe@southronfirm.com
Secondary Email: eservice@southronfirm.com
*Attorneys for Plaintiffs*

21