**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

SHERGROUP USA, LLC, INTREPID SERVICES INTERNATIONAL, LLC, and ONE WORLD SERVICES, LLC,

Plaintiffs, Case No. 6:26-cv-01128-RBD-RMN

v.

CLAIRE SANDBROOK and SHERGROUP GLOBAL CONSULTING LLC,

Defendants.
_______________________________/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RESOLUTION OF MOTION TO COMPEL ARBITRATION**

Plaintiffs, Shergroup USA, LLC, Intrepid Services International, LLC, and One World Services, LLC (collectively, "Plaintiffs"), by and through the undersigned counsel and pursuant to Local Rule 3.01(c), respond in opposition to the Motion to Stay Discovery Pending Resolution of Motion to Compel Arbitration (Doc. # 26) (the "Motion to Stay") filed by Defendants Claire Sandbrook ("Sandbrook") and Shergroup Global Consulting LLC ("SGC") (collectively, "Defendants"), and state as follows:

**INTRODUCTION**

Defendants ask the Court to stay discovery to which they have already refused to respond. Plaintiffs served their first interrogatories and requests for production on August 12, 2026. Defendants asked for thirty more days, and

Plaintiffs agreed. Defendants did not mention a stay when they asked. They filed the Motion to Stay on Friday, October 9, four days before their responses came due, and on October 13 they served responses that answer none of Plaintiffs' ninety-three requests. Each response is the same paragraph: the Motion to Compel Arbitration (Doc. # 20) and the Motion to Stay "remain pending," and "Defendants do not consent to participating in discovery in litigation when there is an agreement to arbitrate." **Exhibit A**. The Court has not entered a stay.

The Motion to Stay should be denied for four reasons. First, Defendants bear the burden of showing good cause, and their only showing is that their own motion is pending, which no rule treats as a stay. Second, a preliminary peek at the Motion to Compel Arbitration reveals no immediate and clear possibility that it will be granted: the Complaint brings no claim under the Side Bar Agreement; Article 5.3.5 of the Side Bar Agreement independently reserves injunctive relief to the courts, which Plaintiffs seek on every count; and SGC, which is not a party to the Side Bar Agreement, answered on the merits without reserving arbitration. Third, a stay would spare Defendants nothing, because the Side Bar Agreement requires an exchange of all relevant documents in arbitration within sixty days of a notice of arbitration, and several of Plaintiffs' requests go to the Side Bar Agreement itself. Fourth, delay harms Plaintiffs, who seek injunctive relief on every count under a schedule the Court will strictly enforce.

**BACKGROUND**

1. Plaintiffs filed this twelve-count Complaint on May 21, 2026, and seek injunctive relief on every count. Doc. # 1. Counts I, II, XI, and XII concern the Operating Agreement among Shergroup USA's members, which contains no agreement to arbitrate; Counts III and IV arise under Florida's limited liability company statute; and Counts V through X arise under the Lanham Act and Florida common law. Doc. # 24 at 2, 6–7. The Complaint brings no claim under the Side Bar Agreement. *See generally* Doc. # 1. SGC answered on June 16, 2026, without pleading or reserving a right to arbitrate. Doc. # 8 at 15.

2. On July 21, 2026, Defendants moved to compel arbitration under the Side Bar Agreement. Doc. # 20. The Side Bar Agreement is a separate agreement dated May 23, 2022, among Shergroup USA, Sandbrook, and the individuals who own the other two Plaintiffs; SGC, which was formed on or about April 18, 2025, is not a party. Doc. # 20 ¶ 11; Doc. # 8 ¶ 56. Plaintiffs responded on August 4, 2026. Doc. # 24. The motion remains pending.

3. On July 24, 2026, counsel for both sides filed a joint Case Management Report. Doc. # 22. Defendants stated that their motion was pending and that "Defendants do not waive their right to arbitrate hereby." *Id.* at 3. They did not ask to stay or phase discovery. The parties identified fourteen subjects on which "[d]iscovery may be needed," including "the formation of the Side Bar Agreement and whether the Side Bar Agreement was fully executed," and

answered "No" when asked whether discovery should be conducted in phases. *Id.* at 5–7.

4. The Court entered its Case Management and Scheduling Order ("CMSO") on August 3, 2026. Doc. # 23. It set the discovery cutoff as September 7, 2027, and warned that it "will strictly enforce the deadlines set in this CMSO" and that "[s]uch deadlines are effective unless modified by a written Order." *Id.* at 3. It also directed that "[r]esponses to discovery requests must be timely, complete, and devoid of boilerplate, non-specific objections," and that "[r]esponding with boilerplate will result in waiver of the objections." *Id.* at 5.

5. On August 12, 2026, Plaintiffs served their first interrogatories and first requests for production on each Defendant. Doc. # 26 ¶ 5. Responses were due thirty days later.

6. On September 9, 2026, Defendants' counsel asked whether Plaintiffs would "agree to a 30 day extension to respond and object" to those requests. **Exhibit B**. Defense counsel did not mention that he would seek a stay. Plaintiffs' counsel agreed to the extension. *Id.*[1] The extension carried the due date to October 13, 2026. Doc. # 26 ¶ 6.

7. Both parties have served their initial disclosures, albeit both parties served them after the date set by the CMSO.

8. On October 6, 2026, twenty-six days after Plaintiffs agreed to the extension, Defendants' counsel first told Plaintiffs' counsel that Defendants

[1] Doc. # 26 ¶ 6 describes the extension as 20 days. The request and Plaintiffs' agreement were for 30 days. **Exhibit B**.

"intend to ask the court for a stay of discovery." **Exhibit C**. Plaintiffs' counsel asked for the basis of the stay, explained that the parties' engaging in discovery "will not operate as a waiver for purposes of compelling arbitration" because Defendants' position was already preserved by the Motion to Compel Arbitration, pointed out that the Side Bar Agreement itself provides for a compressed exchange of documents akin to discovery that would obligatorily occur if arbitration were compelled, and stated, "I don't think a stay of discovery is in the best interests of either party at this time." *Id*. Defendants filed the Motion to Stay on Friday, October 9, 2026. Doc. # 26.

9. Defendants served their responses on October 13, 2026: twenty-two interrogatories and forty-five requests for production to Sandbrook, and twelve interrogatories and fourteen requests for production to SGC. **Exhibit A**. Each of the ninety-three responses is the following:

> Defendants object to this request because this action is subject to the arbitration provision in the Side Bar Agreement. Defendants have filed a motion to compel arbitration (Doc. 20) and a motion to stay discovery (Doc. 26) and those motions remain pending before the Court. Defendants do not consent to participating in discovery in litigation when there is an agreement to arbitrate.

*Id*. Apart from a general objection to the number of interrogatories, the responses state no other objection, answer no interrogatory, and agree to produce nothing. *Id*.

## LEGAL STANDARD

A district court has "broad discretion in managing pretrial discovery matters." *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th Cir. 2002). That

discretion operates under Rule 26(c)(1), which provides that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order "forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A). Defendants' own authority supplies the test for a stay of discovery pending a dispositive motion:

> [T]he moving party bears the burden of showing good cause and reasonableness. . . . Such motions are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems. . . . [A] request to stay all discovery pending resolution of a motion is rarely appropriate where resolution of the motion will not dispose of the entire case. Finally, the Court ordinarily should not stay discovery which is necessary to gather facts in order to defend against the motion.

*Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997) (citations omitted) (quoting *Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988)). The Court "inevitably must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery," and it may "take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear possibility that it will be granted." *Id.* (quoting *Simpson*, 121 F.R.D. at 263). The peek asks whether the motion "appears to be clearly meritorious and truly case dispositive." *Id.* at 652–53.

## ARGUMENT

### I. Defendants have not shown good cause, because the only basis they offer is the pendency of their own motion.

Defendants' showing is that the Motion to Compel Arbitration is pending and, if granted, would end this case in this Court. Doc. # 26 at 4–8. That describes every motion to compel arbitration. It does not show good cause, which *Feldman* places on the movant together with "reasonableness." 176 F.R.D. at 652. A pending motion is also not a stay. Rule 26(c)(1) provides that relief comes by order ("[t]he court may, for good cause, issue an order"), and Defendants have none. Defendants' own authorities involve stays entered by order. *See Suarez-Valdez v. Shearson Lehman/Am. Express, Inc.*, 858 F.2d 648, 649 (11th Cir. 1988) (district court had stayed trial pending arbitration); *Tarver v. Republic Fin., LLC*, No. 6:26-cv-00986-AGM-NWH, 2026 U.S. Dist. LEXIS 184307 (M.D. Fla. Aug. 18, 2026) (order granting motion to stay discovery after hearing at which opposing party did not appear).

Defendants cite *Suarez-Valdez* for the proposition that "[a] stay of discovery is available when there is a pending motion to compel arbitration." Doc. # 26 at 4. The decision does not address a pending motion. The district court there had already stayed the trial pending arbitration, and the Eleventh Circuit held that it then erred by directing discovery to proceed under the Federal Rules: "An agreement to arbitrate is an agreement to proceed under arbitration and not under court rules." 858 F.2d at 649. The court expressly did not decide "whether a district court might order discovery to aid in arbitration where the

court found some 'special need' for the discovery." *Id.* at 649 n.1. No order compels arbitration here, and *Suarez-Valdez* gives a party no right to treat its own motion as granted.

The timeline of events also bears on reasonableness. Defendants moved to compel arbitration on July 21. Three days later they told the Court in the joint Case Management Report that discovery may be needed on fourteen subjects, including the Side Bar Agreement, and they asked for no phasing and no special handling. Doc. # 22 at 5–7. On September 9 they asked for, and received, thirty more days to respond to discovery requests. **Exhibit B**. They said nothing about a stay until October 6, one week before the responses were due under the extension. **Exhibit C**. They then filed the Motion to Stay, did not wait for a ruling, and served responses that treat the motion as already granted. **Exhibit A**. If Defendants believed discovery should wait for the Court's ruling on arbitration, the time to say so was in July, when the parties met and conferred on case management, in August when they were served with discovery, or in September when they asked for an extension to respond to discovery.

The responses also do not satisfy the CMSO or the Rules. The CMSO requires responses that are "timely, complete, and devoid of boilerplate, non-specific objections," and warns that "[r]esponding with boilerplate will result in waiver of the objections." Doc. # 23 at 5. The Rules likewise require objections to be stated "with specificity." Fed. R. Civ. P. 33(b)(4), 34(b)(2)(B). One paragraph, repeated ninety-three times, states no ground specific to any request.

## II. A preliminary peek at the Motion to Compel Arbitration does not reveal an immediate and clear possibility that it will be granted, because the Side Bar Agreement reaches none of Plaintiffs' claims.

Defendants devote one paragraph to the peek. It restates the basis for Defendants' Motion to Compel Arbitration and claims Plaintiffs' Response "misinterprets Article 5.3.5." Doc. # 26 at 6–7. It addresses none of the Response's other grounds. Its only statement on scope is that "each of Plaintiffs' claims arises from or relates to the parties' contractual relationship governing Shergroup USA." Doc. # 26 at 6. The parties have stipulated that the Side Bar Agreement was executed and is enforceable. Doc. # 28 ¶ 3. What remains is what that agreement covers, and on that question the text favors Plaintiffs.

Article 5.3.1 sends to arbitration "all claims or disputes relating in any way to the performance, interpretation, validity, or breach of this Agreement," and "this Agreement" is the Side Bar Agreement. Doc. # 20-1, Art. 5.3.1. Under Florida law, an arbitration provision that reaches claims "relating to" a contract extends to claims with a "significant relationship" to it, and a significant relationship exists "if there is a 'contractual nexus' between the claim and the contract," meaning that the claim "presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract." *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013). "[A] claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy." *Id.*

The Complaint brings no claim under the Side Bar Agreement, and no count requires the Court to refer to or construe it. Counts I, II, XI, and XII concern the Operating Agreement, which contains no agreement to arbitrate. Counts III and IV arise under Florida's limited liability company statute, and Counts V through X arise under the Lanham Act and Florida common law. *See generally* Doc. # 1; Doc. # 24 at 5–10. Counts IX and X run against SGC alone, which is not a party to the Side Bar Agreement. Doc. # 24 at 9–10. The "contractual relationship governing Shergroup USA" on which Defendants rely, Doc. # 26 at 6, is not the agreement whose arbitration clause they invoke: the Operating Agreement governs Shergroup USA and contains no agreement to arbitrate, and the Side Bar Agreement is a separate contract. Doc. # 24 at 11–14.

Even if the Side Bar Agreement reached those claims, Article 5.3.5 would keep them in this Court. Article 5.3.5 provides: "Notwithstanding the foregoing, the parties may at any time seek injunctive relief in a court of law in order to enforce the provisions of this Agreement." Doc. # 20-1, Art. 5.3.5. Plaintiffs seek injunctive relief on every count. Doc. # 1. Defendants say Article 5.3.5 "was intended to allow for enforcement of the arbitration provision in court." Doc. # 26 at 6–7. The words "the provisions of this Agreement" are not limited to the arbitration provision, and Defendants cite no evidence of the intent they describe while faulting the Response for not relying on a declaration. *Id*. at 2, 6. A contract is read from its text, and reading it requires no declaration. If Article 5.3.5 means

what it says, the Motion to Compel Arbitration fails as to every count. *See* Doc. # 24 at 15–17.

SGC is not a party to the Side Bar Agreement, which is dated May 23, 2022, nearly three years before SGC was formed. Doc. # 20 ¶ 11; Doc. # 8 ¶ 56. SGC also answered on the merits on June 16, 2026, without reserving arbitration, and then moved to compel five weeks later. Doc. # 8 at 15; Doc. # 20. Waiver is "the intentional relinquishment or abandonment of a known right," and a party that has agreed to arbitrate gives up that right "by acting inconsistently with that right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417, 419 (2022) (internal quotation marks omitted). In this Circuit, waiver is typically implicated when a party has "invoked the litigation machinery" before "claiming that arbitration was the proper avenue all along," and courts consider whether the party made extensive use of the litigation process, alerted the opposing party before suit that arbitration was required, and promptly moved to compel. *Payne v. Savannah Coll. of Art & Design, Inc.*, 81 F.4th 1187, 1201 (11th Cir. 2023) (citation and internal quotation marks omitted); *see* Doc. # 24 at 17–19. The Side Bar Agreement therefore should not reach any claims against SGC at all.

Defendants' other cases do not help them. In *Tarver*, the magistrate judge stayed discovery after a hearing at which the pro se plaintiff, who had filed ten cases in this District between May 15 and June 22, 2026, "failed to appear." 2026 U.S. Dist. LEXIS 184307, at *1. The court found that his response to the motion to compel "essentially admits that arbitration is the appropriate venue for this

dispute" and that he had served "vastly overbroad discovery." *Id.* at *3–4. Plaintiffs here oppose the Motion to Compel Arbitration on the text of the agreement, and Defendants do not identify a single request as overbroad for any reason. *Bufkin v. Scottrade, Inc.*, 812 F. App'x 838 (11th Cir. 2020) (per curiam), is an unpublished decision reviewing a magistrate judge's discovery ruling for clear error in a pro se plaintiff's case in which the plaintiff did not contest the validity of the arbitration agreement and the magistrate had stayed discovery after determining that a motion to compel arbitration *and* motions to dismiss were likely meritorious and dispositive of the case. 812 F. App'x 841–42, 846. Neither case holds that a party may treat its own pending motion as a stay.

In *Feldman*, the court denied a stay because the relevant motion, "while presenting substantial issues, is not so clear 'on its face [that] there appears to be an immediate and clear possibility that it will be granted.'" 176 F.R.D. at 653. The same is true here, and more so. The Motion to Compel Arbitration faces an arbitration clause that does not reach the pleaded counts, a textual carve-out that would keep every count in this Court in any event, and, as to SGC, a non-signatory that answered on the merits without reserving arbitration. A motion that may leave claims in this Court even if it succeeds is one whose resolution "will not dispose of the entire case," and a stay of all discovery on the strength of it is "rarely appropriate." *Id.* at 652.

## III. A stay would spare Defendants nothing, because an exchange at least as broad is owed in arbitration and Plaintiffs' requests include discovery that goes to the Motion to Compel Arbitration itself.

Defendants' stated burden is the expense of "merits discovery that may prove entirely unnecessary." Doc. # 26 at 9. The Side Bar Agreement answers that. Article 5.3.2 requires that "[a]ll documents, materials, and information in the possession of a party to this Agreement and in any way relevant to the claims or disputes shall be made available to the other parties for review and copying not later than 60 days after the notice of arbitration is served," and that information produced "shall be used exclusively in the arbitration or litigation that may arise." Doc. # 20-1, Art. 5.3.2. If arbitration is compelled, Defendants will owe *all* relevant documents and information, at least as much as Plaintiffs have requested in their first round of discovery, and within sixty days of the notice of arbitration. *Id.* If it is not, they owe the production in this action. Either way the exchange happens, and delay does not avoid the expense Defendants describe.

The main reason for staying discovery is "the elimination of unnecessary expenditures of time, money and other resources," and that reason "is less compelling" where the issues will be litigated in another proceeding. *Feldman*, 176 F.R.D. at 653. Defendants describe Plaintiffs' requests as "broadly cast," as if they were unrelated to the claims in this case, when they go to the very claims Defendants say should be arbitrated. Doc. # 26 at 7–8. Defendants also cite *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997) in an effort to argue that deferring discovery avoids unnecessary costs. *Chudasama* arose from

two years of "protracted discovery disputes" in which "both sides initially adopted extreme and unreasonable positions" and the plaintiffs asked for "almost every tangible piece of information or property possessed by the defendants." 123 F.3d at 1356–57. Its discussion of cost concerns "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief," which "should, however, be resolved before discovery begins." *Id.* at 1367. A motion to compel arbitration is not that motion, and this is not that case. These are Plaintiffs' first requests. Each goes to the claims and defenses pleaded here, as Defendants' own responses, which restate every request, show. **Exhibit A**. If Defendants believed any request to be overbroad or unrelated to the claims or defenses, they could and should have said so in objections, request by request. Instead, they objected to all ninety-three on one ground only: a stay that has not been granted.

Defendants also say that "[n]one of the Plaintiffs' propounded discovery served relates to the pending Motion to Compel." Doc. # 26 ¶ 5. That is incorrect. Interrogatory No. 14 asks Sandbrook to describe the circumstances of the Side Bar Agreement's execution and "your understanding of its intended scope." Interrogatory Nos. 16 through 18 and Request Nos. 37 through 39 to Sandbrook likewise go to the Side Bar Agreement's execution, negotiation, and parties. **Exhibit A**. Defendants' own filings make these requests relevant. Doc. # 26 asserts what Article 5.3.5 "was intended" to do, at 6–7, and Doc. # 20 told the Court that the executed agreement "can be obtained through discovery to the

Plaintiffs or to the third parties who assisted with the negotiation and preparation of the Side Bar Agreement." Doc. # 20 at 11. "[T]he Court ordinarily should not stay discovery which is necessary to gather facts in order to defend against the motion." *Feldman*, 176 F.R.D. at 652. Defendants refused these requests like all the others.

Defendants have otherwise taken part in this case as one that will proceed here. They joined the Case Management Report and its discovery plan. Doc. # 22. They served initial disclosures thirty-six days after the date in the CMSO, Doc. # 26 ¶ 7, and they now cite the timing of Plaintiffs' disclosures as a reason for a stay. Doc. # 26 at 8–9. Defendants cannot rely on the timing of Plaintiffs' disclosures, which Plaintiffs have since served, while picking and choosing what discovery they take part in themselves. Finally, responding to discovery would waive nothing. Defendants stated in the Case Management Report that they "do not waive their right to arbitrate hereby," Doc. # 22 at 3, and Plaintiffs confirmed in writing on October 7 that the parties' engaging in discovery "will not operate as a waiver for purposes of compelling arbitration." **Exhibit C**.

## IV. A stay would prejudice Plaintiffs, who seek injunctive relief on every count under a schedule the Court will strictly enforce.

Plaintiffs seek injunctive relief on every count, directed to Defendants' continuing use of the Shergroup mark, their control of Shergroup USA's digital assets, and their use of its confidential information. Doc. # 1; *see* Doc. # 24 at 17. Delay in discovery is delay in that relief.

The CMSO sets Plaintiffs' expert disclosures for July 7, 2027, and the close of discovery for September 7, 2027. Doc. # 23 at 3. The Court "will strictly enforce" those deadlines, and the parties "may not stipulate to the extension of the discovery deadline set forth in this CMSO." *Id.* at 3, 6. Plaintiffs do not contend the deadlines are imminent. A stay of unknown length, however, runs against dates the Court will not move on the parties' agreement, costing Plaintiffs time they cannot recover without leave of Court. The Motion to Compel Arbitration has been pending for three months, since July 21, and Defendants ask for a stay that ends only when the Court rules. Doc. # 26 at 9. If the motion is denied, Plaintiffs will have lost the months of the stay. If it is granted, the Side Bar Agreement's sixty-day exchange means discovery would then move faster, Doc. # 20-1, Art. 5.3.2, so a stay now would only postpone an exchange the parties agreed would be quick. Mediation is set for January 21, 2027, Doc. # 25, and Plaintiffs agreed to mediate early on the understanding that they would receive discovery on certain topics. **Exhibit C**.

## CONCLUSION

Defendants have not carried their burden of showing good cause and reasonableness. The Motion to Compel Arbitration does not present an immediate and clear possibility of success, a stay would relieve Defendants of no burden they will not carry in arbitration, and delay would prejudice only Plaintiffs under a case management schedule the Court will strictly enforce. Plaintiffs reserve the right to move under Rule 37(a) to compel proper responses

to their first interrogatories and requests for production, and for the expenses of doing so.

WHEREFORE, Plaintiffs Shergroup USA, LLC, Intrepid Services International, LLC, and One World Services, LLC respectfully request that this Court deny Defendants' Motion to Stay Discovery Pending Resolution of Motion to Compel Arbitration (Doc. # 26), and grant Plaintiffs such other and further relief as the Court deems just and proper.

Dated: October 22, 2026.

Respectfully submitted,

/s/ Julia Hannah Weber
Julia Hannah Weber
Florida Bar No. 1045592
Joseph F. Southron, Esq.
Florida Bar No. 122109
**SOUTHRON FIRM, P.A.**
400 N. Ashley Drive, Suite 1720
Tampa, Florida 33602
Tel. (813) 773-5105
Fax (813) 683-4338
julia.weber@southronfirm.com
joe@southronfirm.com
eservice@southronfirm.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed on October 22, 2026, with the Court via CM/ECF system, which will send notification of such filing to all parties and counsel of record.

/s/ Julia Hannah Weber
Julia Hannah Weber