**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

SHERGROUP USA, LLC; INTREPID SERVICES INTERNATIONAL, LLC; and ONE WORLD SERVICES, LLC,

Plaintiffs,

v. Case No. 6:26-cv-1128-RBD-RMN

CLAIRE SANDBROOK; and SHERGROUP GLOBAL CONSULTING LLC,

Defendants.

---

**ORDER**

Before the Court is Defendants' Motion to Compel Arbitration. (Doc. 20.) The motion is due to be granted in part.

**BACKGROUND**

This business divorce dispute revolves around the contracts executed by members of a Limited Liability Company ("LLC"). Defendants are the dissociated member of the main LLC and her newly formed business. They seek to compel Plaintiffs, the main LLC and its remaining members, to arbitrate.

In 2011, Defendant Claire Sandbrook formed and was the sole member of Plaintiff Shergroup USA, LLC ("Shergroup"). (Doc. 1, ¶¶ 13, 22.) Shergroup provides security related services. (*See* Doc. 20, p. 3.) In 2022, Sandbrook admitted

Intrepid Services International, LLC ("Intrepid") and One World Services, LLC ("One World") as additional members of Shergroup. (Doc. 1, ¶ 27.)

On May 23, 2022, Shergroup's Operating Agreement ("OA") was executed to admit Intrepid and One World to the LLC. (Doc. 1-1.) John Johnson signed on behalf of Intrepid, Enrique Sierra signed on behalf of One World, and Sandbrook signed on her own behalf in her individual capacity as the original Shergroup member. (*See id.* at 15.) The OA does not have an arbitration provision; it provides for litigation in "any court having equity jurisdiction" in the event of a breach. (*Id.* at 11, § 12.4.)

That same day, the owners of Intrepid and One World, along with Sandbrook, executed a separate Side Bar Agreement ("SBA") to bind themselves individually to certain restrictive covenants. (Doc. 20-1, p. 2.) The purpose of the SBA was to bind the "Actual Owners" of the companies involved in Shergroup, not merely the LLCs that were the signatories of the OA. (*See id.*) The parties stipulated that the SBA was fully executed by all of the signatories. (Doc. 28.) Enrique Sierra, Sandbrook, Greg Wright, John Johnson, and Paul Hammond signed on their own behalf and Sandbrook signed on behalf of Shergroup. (*See* Doc. 20-1, pp. 7–10.) Other than Sandbrook for Shergroup, Intrepid and One World do not appear on the signature block; all other signatories appear to have signed in their individual capacities, with no "on behalf of" listed next to their

names. (*See id.*)

Unlike the OA, the SBA did contain an arbitration provision. (*Id.* at 5.) It provides: "Notwithstanding anything to the contrary in this Agreement, all claims or disputes relating in any way to the performance, interpretation, validity, or breach of this Agreement shall be referred to final and binding arbitration . . . ." (*Id.* at 5–6, § 5.3.1.)

After these agreements were executed, disputes arose between Sandbrook and the other members of Shergroup over Sandbrook's management. (Doc. 1, ¶ 43.) While these disputes were taking place, Sandbrook formed Shergroup Global Consulting LLC ("SGC") and filed a trademark application for the Shergroup word mark without the permission of Shergroup or its other members. (*Id.* ¶¶ 56, 59, 61.) These disputes culminated in Sandbrook's dissociation from Shergroup in April 2025. (*Id.* ¶¶ 49–50.)

Shergroup and its now remaining members—Intrepid and One World—contend that Sandbrook's conduct leading up to and following her dissociation breached the OA and her fiduciary duties. (*Id.* ¶¶ 119–31.) So they sued Sandbrook and SGC for: (1) breach of Article 12.1 of the OA; (2) breach of Articles 12.2 and 12.66 of the OA; (3) breach of fiduciary duty; (4) wrongful dissociation; (5) tortious interference; (6) federal false designation of origin and unfair competition under 15 U.S.C. § 1125(a)(1)(A); (7) contributory federal false designation of origin and

unfair competition; (8) Florida common-law trademark infringement and unfair competition; (9) cancellation of trademark registration under 15 U.S.C. § 1119; (10) fraudulent procurement of trademark registration under 15 U.S.C. § 1120; (11) fraudulent inducement; and (12) a declaratory judgment under 28 U.S.C. § 2201. (*Id.* ¶¶ 119–212.)

Sandbrook and SGC now move to compel arbitration, arguing that Shergroup, Intrepid, and One World are subject to the SBA's arbitration provision— even though Intrepid and One World are not signatories to the SBA. (*See* Doc. 20.) Plaintiffs oppose. (Doc. 24.) The matter is ripe.

**STANDARDS**

The Federal Arbitration Act ("FAA") exhibits a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "Because arbitration is a matter of contract, however, the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) ("Arbitration under the Act is a matter of consent, not coercion."). On a motion to compel arbitration, a court must determine: (1) whether a valid agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether

the right to arbitrate was waived. *Abellard v. Wells Fargo Bank, N.A.*, No. 19-CV-60099, 2019 WL 2106389, at *2 (S.D. Fla. May 14, 2019).

**ANALYSIS**

There is no question that the SBA contains an arbitration agreement. (*See* Doc. 20-1, pp. 5–6, § 5.3.1.) The question here is who is bound by it. The Court finds that the arbitration agreement binds Sandbrook, SGC, and Shergroup, but not Intrepid and One World.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (cleaned up). "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The OA and the SBA are governed by Florida law. (*See* Doc. 1-1, p. 14, § 13.2; Doc. 20-1, p. 5, § 5.1.) Florida law provides that the signature of a member binds an LLC "unless the member had no authority to act for the company in the particular matter and the person with whom the member was dealing knew or had notice that the member lacked authority." Fla. Stat. § 605.04074(1)(a). Here, the SBA was signed by the owners of Intrepid and One World and Sandbrook individually and Sandbrook on behalf of Shergroup. (*See* Doc. 20-1, pp. 7–10.) So the individual

signatories and Shergroup—via Sandbrook signing in her representative capacity—are bound by the SBA. *See* Fla. Stat. § 605.04074(1)(a).

The SBA's arbitration provision states that "all claims or disputes relating in any way to the performance, interpretation, validity, or breach of this Agreement shall be referred to final and binding arbitration, before an arbitrator . . . under the rules of the American Arbitration Association ("AAA")." (Doc. 20-1, pp. 5–6, § 5.3.1.) Defendants argue that this is a delegation provision—an agreement "to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement." *See Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017). To find that delegation occurred courts examine "whether the parties have manifested a clear and unmistakable intent to arbitrate" by looking at the language of the delegation provision itself. *Id.* at 1267. The language of the SBA's arbitration provision evinces a clear and unmistakable intent to arbitrate gateway issues. *See id.* (requisite intent where provision committed "any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement" to arbitrator); *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1148 (11th Cir. 2015) (same for provision that committed to arbitration "any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement"); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) (same where provision incorporates the AAA

rules). And because Plaintiffs only challenge the arbitration provision as a whole by arguing that this dispute falls outside its scope instead of the delegation provision itself, the Court "must treat the delegation provision as valid and allow the arbitrator to determine the issue of arbitrability." *Parnell*, 804 F.3d at 1148; *Jones*, 866 F.3d at 1264–65 (declining to examine plaintiff's challenge that arbitration agreement did not encompass his claims).

Plaintiffs argue that the delegation clause is inapplicable because their claims arise from the OA—which has no arbitration clause—not the SBA. (Doc. 24, pp. 10–11.) But even if the Court agreed with that argument, in the face of a delegation clause "a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). "And the question of whether the plaintiffs' claims arose not from the [SBA] but from [the OA] must also be arbitrated because it is a question of arbitrability, which the parties delegated to the arbitrator under the rules of the American Arbitration Association." *Mexicanos v. Exec. MFE Aviation, LLC*, 310 So. 3d 76, 79 (Fla. 4th DCA 2021). So faced with the SBA's delegation provision, the Court must give effect to the signatories' intent and at least compel Shergroup's claims against Sandbrook to arbitration.

Whether the nonsignatory parties—SGC, Intrepid, and One World—may

compel and be compelled to arbitrate is a closer call.[1] As to the claims against SGC, "a non-signatory to a contract containing an arbitration agreement ordinarily cannot compel a signatory to submit to arbitration." *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 943 (Fla. 1st DCA 2004). But exceptions exist, and SGC argues it can compel arbitration under an equitable estoppel theory. (Doc. 20, pp. 16–17.) "Equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of concerted conduct by both the non-signatory and one or more of the signatories to the contract." *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 212 (Fla. 3d DCA 2003). Here, Shergroup—a signatory to the SBA—alleges that Sandbrook and SGC acted collectively, that SGC only acted through Sandbrook, and that the same facts form the basis of the claims against both Defendants. (*See* Doc. 1, ¶¶ 58, 141–48, 151–60, 175–82.) So equitable estoppel applies. *See Cary Canter ex rel. v. Game of Silks, Inc.*, No. 25-80262-CIV, 2026 WL 3077778, at *5 (S.D. Fla. Mar. 3, 2026); *Dimattina Holdings, LLC v. Steri-Clean, Inc.*, 195 F. Supp. 3d 1285, 1292 (S.D. Fla. 2016); *Armas*, 842 So. 2d at 212. To the extent Plaintiffs argue that SGC waived arbitration,[2] the Court disagrees because it has

---

[1] Although not raised by the parties, the question of whether a non-signatory may enforce or be bound by an arbitration clause is a question for the Court. *See Riley v. Gen. Motors, LLC*, 664 F. Supp. 3d 1336, 1350, 1350 n.14 (M.D. Fla. 2023) (Dalton, J.); *Taylor Grp., Inc. v. Indus. Distribs. Int'l Co.*, 506 F. Supp. 3d 1256, 1266 (S.D. Fla. 2020), *aff'd*, 859 F. App'x 439 (11th Cir. 2021).

[2] The parties also failed to raise the issue of whether waiver is for the court or arbitrator to resolve, but the Eleventh Circuit has held that whether a party has waived its right to compel arbitration based on its earlier litigation conduct is an issue presumptively for a court, rather than

not substantially participated in the litigation; SGC joined this motion a little over a month after filing an answer that failed to mention arbitration and no discovery has commenced in the interim. (*See* Docs. 8, 20, 26); *see Bey v. XPO Logistics, Inc.*, No. 6:16-CV-2195, 2017 WL 3923030, at *3 (M.D. Fla. Sep. 7, 2017) (Dalton, J.) (no waiver where defendant demanded arbitration six months after filing an answer that failed to raise arbitration and already served initial disclosures); *c.f. Robinson v. Alston*, 596 Fed. App'x. 871, 873 (11th Cir. 2015) (wavier where defendant waited eight months before demanding arbitration with numerous filings in the interim). So SGC may compel Shergroup's claims against it to arbitration. And, as noted previously, whether Shergroup's claims against SGC fall within the scope of the arbitration provision has been delegated to the arbitrator, not this Court. *See Cary Canter*, 2026 WL 3077778, at *6; *Jones*, 866 F.3d at 1267.

The same cannot be said for Intrepid and One World's claims. Under Florida law, an LLC is an entity distinct from the individuals who comprise it. *See* Fla. Stat. § 605.0108; *Palma v. S. Fla. Pulmonary & Critical Care, LLC*, 307 So. 3d 860, 866 (Fla. 3d DCA 2020). The capacity in which an individual enters an agreement—whether individually or as a representative for an LLC—guides the Court's analysis of assent. *See Robert P. Boswell, D.M.V., P.A. v. Scott J. Swerdlin, D.M.V.*,

---

an arbitrator. *See Grigsby & Assocs., Inc. v. M. Secs. Inv.*, 664 F.3d 1350, 1353 (11th Cir. 2011).

*P.A.*, No. 08-80482-CIV, 2008 WL 11332004, at *4 (S.D. Fla. Sep. 25, 2008), *adopted*, No. 08-80482-CIV, 2008 WL 11333663 (S.D. Fla. Oct. 15, 2008). So a non-signatory LLC will typically not be bound by an agreement executed by a signatory in his individual capacity. *See Pierre's Caribbean Cuisine LLC v. LeaseFlorida LLC*, 408 So. 3d 853, 856 (Fla. 3d DCA 2025), *reh'g denied* (Apr. 24, 2025). Here, the owners of Intrepid and One World signed the SBA in their individual capacities; neither Intrepid nor One World are signatories to the agreement. (*See* Doc. 20-1, pp. 7–10.) So only the individual *owners* agreed to the SBA's provisions. *See Boswell*, 2008 WL 11332004, at *4 (agreement signed by members in their corporate capacities not binding on parties to the initial agreement executed in their individual capacities); *Pierre's*, 408 So. 3d at 856 (agreement executed in a signatory's individual capacity not binding on non-signatory LLC). And even though non-parties may be bound by arbitration agreements under certain state law theories, Defendants fail to argue that any of these theories apply to Intrepid or One World to bind them to the SBA. (*See* Doc. 20); *Liberty Commc'ns, Inc. v. MCI Telecomms. Corp.*, 733 So. 2d 571, 574 (Fla. 5th DCA 1999) (listing theories of (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel). So on a fundamental level, Intrepid and One World did not agree to arbitrate; in fact, the OA—the agreement that they did sign—indicates a contrary intent to *litigate* this dispute. (Doc. 1-1, p. 11, § 12.4 ("[T]he Company shall

have the right and remedy . . . to have the provisions of this Article 12 specifically enforced by any court having equity jurisdiction . . . .”)). Concluding otherwise would impermissibly force Intrepid and One World to arbitrate disputes that they did not agree to arbitrate and read out the dispute resolution provision from the OA. *See AT&T*, 475 U.S. at 648; *Volt*, 489 U.S. at 479. So Intrepid and One World’s claims cannot be compelled to arbitration. *See Klay*, 389 F.3d at 1200; *Abellard*, 2019 WL 2106389, at *2.

In sum, the Court finds that Shergroup’s claims against Sandbrook and SGC must be compelled to arbitration, while Intrepid and One World’s claims must be litigated. But given the fact that Intrepid and One World’s claims are identical to Shergroup’s claims against the same Defendants, the Court exercises its discretion to stay the litigation of the nonarbitrable claims to avoid duplicative proceedings, inconsistent rulings, and unnecessary expense. *Klay*, 389 F.3d at 1204; *Variable Annuity Life Ins. Co. v. Laferrera*, 680 F. App’x 880, 885 (11th Cir. 2017).

**CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED**:

1. Defendants’ motion to compel arbitration (Doc. 20) is **GRANTED IN PART AND DENIED IN PART**:

    a. The motion is **GRANTED** as to Shergroup’s claims against Sandbrook and SGC.

b. The motion is **DENIED** as to Intrepid and One World's claims against Sandbrook and SGC.

2. Defendants' motion to stay discovery (Doc. 26) is **DENIED AS MOOT** in light of this Order.

3. This case is **STAYED** pending arbitration.

4. The Clerk is **DIRECTED** to administratively close the file.

5. On **Thursday, February 4, 2027**, and every ninety days thereafter, the parties are **DIRECTED** to file a joint report on the status of the arbitration.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on November 5, 2026.

ROY B. DALTON, JR.
United States District Judge